(96 Misc. Rep. 485)

PEOPLE ex rel. BROWNELL v. HIGGINS et al.

(Supreme Court, Special Term, Onondaga County.   August 26, 1916.)

1. MANDAMUS ⊜164(1)—PRESUMPTIONS.
    Where defendants in a mandamus proceeding filed no reply to the petition, the facts stated in the petition must be assumed to be true.
    [Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 344, 358, 360; Dec. Dig. ⊜164(1).]

2. RECORDS ⊜14—INSPECTION—RIGHTS OF TAXPAYERS.
    General Municipal Law (Consol. Laws, c. 24) § 51, requires municipal records to be kept for inspection by taxpayers, and city officers cannot avoid the requirement by depositing documents outside their offices, but they must retain control of the records and preserve them for inspection.
    [Ed. Note.—For other cases, see Records, Cent. Dig. §§ 13–18; Dec. Dig. ⊜14.]

3. RECORDS ⊜14—INSPECTION OF DOCUMENTS—RIGHTS OF TAXPAYERS—WHO MAY INSPECT.
    The right of a taxpayer to invoke action under such section to compel submission of such documents to his inspection is not dependent upon pendency of an action, but exists preliminary to action for the purpose of determining whether it should be brought.
    [Ed. Note.—For other cases, see Records, Cent. Dig. §§ 13–18; Dec. Dig. ⊜14.]

4. RECORDS ⊜14—INSPECTION OF DOCUMENTS—"PUBLIC RECORD."
    Opinions of regularly employed attorneys to assist in a municipal bond issue, communicated to the heads of the water department, are "public records," within General Municipal Law, § 51, requiring public records to be kept open for inspection by taxpayers.
    [Ed. Note.—For other cases, see Records, Cent. Dig. §§ 13–18; Dec. Dig. ⊜14.
    For other definitions, see Words and Phrases, First and Second Series, Public Record.]

Application by the People, on the relation of Spencer Brownell, for mandamus against John D. Higgins and others, as Water Service Commissioners, and John R. Pidgeon, as City Attorney, of the City of Oswego.  Application granted.

Udelle Bartlett, of Oswego, for relator.
John D. Higgins, David P. Morehouse, Thomas H. King, and John R. Pidgeon, all of Oswego, for defendants.

ROSS, J.  [1] The defendants, upon the argument of this application, did not file any papers in reply to the relator's petition, so that the facts stated in the petition must be assumed to be true.
[2] The provision invoked by the relator is as follows:

"All books of minutes, entry or account, and the books, bills, vouchers, checks, contracts or other papers connected with or used or filed in the office of, or with any officer, board or commission acting for or on behalf of any county, town, village or municipal corporation in this state are hereby declared to be public records, and shall be open, subject to reasonable regula-

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tions to be prescribed by the officer having the custody thereof, to the inspection of any taxpayer." Consol. Laws, c. 24, § 51.

It may be stated that the merits of any controversy which has or may hereafter arise as to the legality or wisdom of any action heretofore taken, or which may hereafter be taken, by the defendants as officials of the city of Oswego, is not involved in this application. It is immaterial who has possession of the document or documents in question, whether he is a lawyer or layman—whether he has a private office or occupies an office provided by the city. The defendants cannot avoid the requirements of the statute by depositing the document or documents in question with any person or in any place. It is their duty to retain such control of public records as to enable them to comply with any legal right of any person.

[3, 4] It may be assumed that the motives of the relator in seeking inspection pursuant to a claimed legal right are immaterial. The purpose of the section of which the foregoing quotation is a part is to prevent extravagance, waste, incompetency, and corruption in public officials, and as a part and parcel to the provisions in relation thereto is the section aforesaid, for the purpose of obtaining discovery of what actually has been or is proposed to be done by such officials. If their action has been legal, they have nothing to fear. In fact, it may be assumed that the relator fears some abuse of power or some illegal action in seeking such inspection, and it may also be argued that, by denying it, the defendants add some force to such apprehension. A reasonable construction of the statute as an entirety would seem to indicate that to give a taxpayer the right to inspect a public document is not made dependent upon the fact that an action by a taxpayer is actually pending, but that this provision was intended, with other purposes, to enable a taxpayer to ascertain whether facts existed which would justify such action. I think that the opinion or opinions in question are public records within the meaning of the statute herein invoked.

The defendants argued very earnestly and ably that the opinion or opinions of which inspection is sought were the communications of a counsel to his client, and were privileged, and to support this contention they refer on the argument and in the brief of the learned counsel to a person seeking to compel a district attorney or city attorney to disclose affidavits or evidence which they have in a pending case, and to sustain this contention they cite the case of People ex rel. Updyke v. Gillon, 9 N. Y. Supp. 563. This was a Special Term decision in the First Department in 1889, and was to compel a further return to a writ of certiorari to compel the defendants assessors to return the opinions of three gentlemen who at various and different times occupied respectively the position of counsel to the corporation of the city of New York, and which opinions related to the assessibility of property, etc., which application was denied. That case, as it seems to me, is clearly distinguishable from the case at bar, in that (a) the provisions of section 51 of the General Municipal Law were in no way invoked or applicable; and (b) there is no claim in the Updyke

Case that the assessors had done anything to waive the privilege of the opinions received by them.

It appears from the petition that on the 28th of March, 1916, the common council of the city of Oswego passed a resolution of which the following is a copy:

"Whereas, the power commission of the city of Oswego has requested the city attorney to secure the opinion of J. H. Caldwell, of New York City, on many of the questions arising and to arise in connection with the city's development of the power at the high dam; and

"Whereas, the city attorney and Hon. John D. Higgins conferred with J. H. Caldwell at New York City on March 27th; and

"Whereas, certain complex questions were submitted to said Caldwell: Therefore be it

"Resolved, that, acting upon the request of the Oswego power commission, the city attorney be and he hereby is directed to employ counsel in the matter of the questions submitted to said Caldwell and prepared by the city attorney and the said power commission." (Folios 18 and 19.)

It also appears that the defendant John R. Pidgeon has, in pursuance to the foregoing resolution, received a written opinion and letters from J. H. Caldwell, in New York City; that the said Caldwell—or the firm of Caldwell & Maselich—has been retained by the city of Oswego to act as counsel in the matter of a proposed bond issue; and that the said attorney or attorneys are to be paid for said opinion or opinions out of funds belonging to the city of Oswego raised by taxation. Said petition also alleges that, previous to the election referred to in said petition, the water service commission had stated in the local newspapers and verbally to different taxpayers that said water service commission proposed to have said bonds of said city issued, and said hydro-electric plant built, upon the recommendations of said opinions by said Caldwell, and the common council, in causing the said bonds of said city to be issued, are acting under and pursuant to said written opinions of said Caldwell. The inspection sought in this application is of the foregoing opinion or opinions.

It seems to me that whatever privileged character the document or documents sought to be inspected might otherwise have was lost by reason of the action of the defendants. The opinion in question was obtained pursuant to a resolution passed by the common council of the city of Oswego, has been used in connection with their duties as water commissioners, has been referred to and published in part in public prints, and they are now acting pursuant to such written opinions. By analogy which arises when the question of privilege is invoked, the defendants have waived its protection. A party who has the right to claim the privilege of a communication made to him by his attorney must himself respect such privilege, and, if it is disclosed by him to any one, the right to such claim is endangered, and he cannot disclose a part of the communication or knowledge received from his attorney, and close the door to further inquiry. This is not only supported by authorities, but is in accord with our notion of fairness.

The application for peremptory mandamus is granted, with $50 costs to the petitioner. Code of Civil Procedure, § 2086.